IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PILLAR TO POST, INC., et al.         :

               :

   v.                               :   Civil Action No. DKC 18-3761

               :

MARYLAND HOME INSPECTORS, INC.,
et al.                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract, tortious interference with contract, and Lanham Act case is the motion to dismiss or in the alternative for summary judgment filed by Defendants LodeStar Inspection Services, LLC, Neil Roseman, Rachel Oslund, Jennifer Shipe, Kathleen Johnson, Bryant White, Keith Vierling, Kevin Bennett, and Richard M. Williams. (ECF No. 26).[1]  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.   Background**

Unless otherwise noted, the facts outlined here are set forth in the amended complaint, (ECF No. 23), and construed in the light most favorable to Plaintiff.

---

[1] The status of Maryland Home Inspectors, Inc. is unclear. Fairly early in the case, an attorney filed a request for extension on behalf of all defendants, reciting that all had been served. (ECF No. 4).  No attorney has otherwise entered an appearance for MHI, nor has an answer or motion to dismiss has been filed on its behalf.

Pillar to Post, Inc. ("Pillar to Post") is a Delaware corporation and franchisor of home inspection businesses.[2] In 2006, James Williams ("J. Williams") began operating a Pillar to Post franchise in Maryland called Maryland Home Inspectors ("MHI"). MHI operated under a franchise agreement (the "Franchise Agreement") with Pillar to Post. In recent years, J. Williams began to transition management of the business to his daughter, Rachel Oslund.

On December 22, 2017 (the "Petition Date"), MHI filed for bankruptcy. From the Petition Date through October 4, 2018, MHI operated as a debtor-in-possession under the Bankruptcy Code. On September 24, 2018, Ms. Oslund announced that she would be leaving MHI to start a new home inspection business with Neil Roseman. That business eventually became LodeStar, LLC, and Oslund would eventually bring her previous staff at MHI — Shipe, Johnson, Bennett, White, Vierling, and Richard M. Williams ("R. Williams") — with her, while her father retired. As a result of Oslund's departure, MHI announced that it would be closing its business and converting the Bankruptcy Case to Chapter 7.

In a series of e-mail communications and in-person meetings in September and October 2018, Oslund, J. Williams, Roseman, and certain MHI staff members discussed their transition from MHI to

---

[2] Pillar to Post, Inc. also operates as a distinct, Canadian corporation under the same name. The Canadian Pillar to Post, Inc. is also a plaintiff in this action.

LodeStar as a "changeover." Ms. Oslund retained her old business phone number at MHI explicitly for the purpose of maintaining connections with previous MHI clients at LodeStar. Ms. Oslund also sent an e-mail to a list of customers and referral sources (the "Referral List") informing them that she and her team would be operating a new business with the "[s]ame great service. Same Passion for radon education. New name."

On November 30, 2018, the Bankruptcy Court entered an Order Modifying Automatic Stay, which permitted Pillar to Post to try to enforce its termination and non-monetary post-termination rights under the Franchise Agreement. On December 4, 2018, Pillar to Post sent MHI a Notice of Termination, which terminated the Franchise Agreement.

On December 6, 2018, Plaintiffs filed this suit. (ECF No. 1). On March 11, 2019, Plaintiffs, without objection from Defendants, filed an amended complaint (the "Amended Complaint"). (ECF No. 23). On March 29, 2019, all Defendants, except MHI, filed their motion to dismiss. (ECF No. 26). Plaintiffs responded in opposition, (ECF No. 31), and Defendants replied, (ECF No. 36).

## II. Analysis

### A. Failure to Join

Defendants argue that Plaintiffs have failed to join J. Williams, an allegedly required and indispensable party under

Fed.R.Civ.P. 19(a) and (b). (ECF No. 26-1, at 21)[3]. A party must be joined under Rule 19(a)(1) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, the parties agree that joinder of J. Williams would destroy complete diversity in this case and deprive the court of subject matter jurisdiction. Under Rule 19(b):

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;

---

[3] References to page numbers in the parties' papers are to the ECF-generated page numbers at the top of each page.

4

>>(B) shaping the relief; or
>>
>>(C) other measures;
>
>>(3) whether a judgment rendered in the person's absence would be adequate; and
>
>>(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

Thus, determining whether the court should dismiss under Rule 12(b)(7) involves a two-step inquiry: "First, the district court must determine whether the party is 'necessary' to the action under Rule 19(a). If the court determines that the party is 'necessary,' it must then determine whether the party is 'indispensable' to the action under Rule 19(b)." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249-50 (4th Cir. 2000). Dismissal under this standard "is a drastic remedy, however, which should be employed only sparingly." *Id.*

The burden falls to Defendants to show that Plaintiffs have failed to join a necessary and indispensable party. *See R-Delight Holding, LLC v. Anders*, 246 F.R.D. 496, 499 (D.Md. 2007) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed.2007)). Here, Defendants have failed to meet that burden.

Defendants note that "Rule 19 determinations are fact-specific and must be made on a case-by-case basis." (ECF No. 26-

1, at 21) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-119 (1968)). Rule 19(a) allows several avenues for finding that a party is "necessary." Under Fed.R.Civ.P. 19(a)(1)(A), a party is "necessary" if, "in that person's absence, the court cannot accord complete relief among existing parties[.]" Defendants cite to an unreported decision from the United States District Court for the Eastern District of North Carolina for the proposition that 19(a)(1)(A) directs courts to consider "whether failure to join the absent party would compromise the public interest in avoiding repeated lawsuits on essentially the same subject matter." (ECF No. 26-1, at 21). Defendants then cite to a United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") case, *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999), for the proposition that the "potential for factual and legal 'whip-saw' weighs heavily in favor or having one court adjudicate the entire case with all of the affected parties before it." (ECF No. 26-1, at 22). Yet Defendants nowhere explain how any such "factual and legal whip-saw" could or would occur.

In *Owens-Illinois*, the court faced a situation where multiple suits – one in federal court, one in state court – were pending on the same issue: the arbitrability of the dispute. *Owens-Illinois*, 186 F.3d at 441. Unlike in *Owens-Illinois*, there is not here "a high likelihood of incongruous results" of the kind that should concern this court. *Id*. Just the opposite. Defendants argue

6

that J. Williams could be subject to "individual tort liability" as well as liability resulting from "his contractual obligations as a guarantor of the Franchise Agreement." (ECF No. 36, at 4). It is axiomatic, however, that neither joint tort-feasors, nor guarantors, nor indemnitors are considered "necessary" parties under Rule 19. *See, e.g., Sullivan v. Starwood Hotels and Resorts Worldwide, Inc.*, 949 F.Supp.2d 324, 331 n.26 (D.Mass. 2013) (holding that neither joint tort-feasors nor guarantors are necessary parties and collecting cases); *Montgomery Cty., Md. v. Jaffe, Raitt, Heuer & Weiss, P.C.*, 897 F.Supp. 233, 239 (D.Md. 1995) (holding that guarantors are not necessary parties). In light of this fact, Defendants have entirely failed to suggest what kind of "incongruous results" regarding tort or contractual liability of J. Williams could render J. Williams a necessary party.

The only arguments for J. Williams' joinder which Defendants make with any particularity are those based on his being a signatory to the Franchise Agreement as well as to a Guarantee, Indemnification and Acknowledgment, or "Contract Guaranty." While it is true that "a contracting party is the paradigm of an indispensable party[,]" *Nat'l Union*, 210 F.3d at 252, Defendants oversimplify the rule. They argue that "Williams is a contracting party by virtue of his signing the Contract Guaranty individually, making him the only Defendant other than MHI with specific contractual obligations to Pillar to Post." (ECF No. 26-1, at

25). In other words, J. Williams is a contracting party, but he is not a contracting party for the purposes of Plaintiffs' breach of contract claim, which is brought under the Franchise Agreement, *not* the Contract Guaranty.  While Defendants are correct to say that this means J. Williams has "specific contractual obligations to Pillar to Post[,]" these contractual obligations are those of a guarantor and indemnitor, neither of which would render him a "necessary" party, much less an "indispensable" one. *See Sullivan*, 949 F.Supp.2d at 331 n.26; *Montgomery County, Md.*, 897 F.Supp. at 239.

With regard to Fed.R.Civ.P. 19(a)(1)(B), the alternate means of finding a party "necessary," Defendants merely repeat the text of the rule without making any argument.  Because J. Williams is not a "necessary" party, and thus cannot be an "indispensable" party, the motion to dismiss under Fed.R.Civ.P. 12(b)(7) will be denied.

    **B.**    **Failure to State a Claim**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 n.3 (2007). There must be more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268, (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court can consider documents attached to the complaint, referred to in the complaint, or integral to the dispute, if their authenticity is not challenged. *Strickland-Lucas v. Citibank, N.A.,* 256 F.Supp.3d 616, 622-23 (D.Md. 2017) (quoting *Goines v. Valley Community Services Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016)).

Plaintiffs bring four claims in their amended complaint: (1) breach of contract against Ms. Oslund; (2) "Tortious Interference" against LodeStar, Oslund, Roseman, and the MHI Employees; (3) civil conspiracy against LodeStar, Oslund, Roseman, and the MHI Employees, and (4) "Unfair Competition" under the Lanham Act against MHI and Oslund. (ECF No. 23, at 19-23).

Defendants argue that that an order in the Bankruptcy Case has preclusive effect with regard to certain issues raised in Plaintiffs' complaint. (ECF No. 26-1, at 27). Specifically, Defendants suggests that "collateral estoppel can be invoked with

9

respect to the causes of action that are based on the good faith conduct of the Defendants[.]" *Id*. It is not entirely clear which causes of action "are based on the good faith conduct of the defendants." Defendants argue that "good faith" is relevant to the claim for tortious interference. (*Id*. at 26).

For collateral estoppel to apply, the party asserting it must establish five elements, the first of which is that "the issue precluded must be identical to one previously litigated[.]" *Ramsay v. U.S.N.I.S.*, 14 F.3d 206, 210 (4th Cir. 1994). Defendants seem to suggest that because the Bankruptcy court held that LodeStar and Roseman acted "in good faith" with regard to the proposed purchase and use of MHI's assets, Plaintiffs are precluded from litigating certain issues which the court must necessarily reach in analyzing the tortious interference claim. As will be made clear below, "good faith" is not an element or issue for any of Pillar to Post's claims. Further, as Plaintiffs correctly assert, "[t]he scope of any finding of good faith was confined to LodeStar's offer to purchase the assets and the approval of the trustee's sale of the assets." (ECF No. 31, at 17).

For the foregoing reasons, collateral estoppel is irrelevant for the purposes of Defendants' motion to dismiss.

   1.   **Count I: Breach of Contract**

Plaintiffs' first claim is that Ms. Oslund "breache[d]. . . the non-compete provision in the Franchise Agreement." (ECF No. 23, at 19). Defendants argue that Ms. Oslund is not bound by the

Franchise Agreement. (ECF No. 26-1, at 29). Plaintiffs allege that Ms. Oslund was an officer of MHI, (ECF No. 23, ¶¶ 2, 3, 53), and thus bound by Section 17.3 of the Franchise Agreement. That section states:

> Franchisee covenants that, except as otherwise approved in writing by Franchisor, Franchisee, or if the Franchisee is a corporation or limited liability company, then its *officers*, directors, shareholders, and members shall not, for a continuous uninterrupted period commencing upon the expiration or termination of this Agreement (regardless of the cause for termination) and continuing for two (2) years thereafter (and in the case of any violation of this covenant, for two (2) years after the violation ceases), either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person or legal entity, own, maintain, operate, engage in, be employed by, provide assistance to, or have any interest in (as owner or otherwise) any business that offers products or services which are the same as or similar to the products or services offered by the Pillar to Post® home inspection franchise under the Pillar to Post® System within the Non-Exclusive Territory or within 25 miles of the perimeter of the Non-Exclusive Territory.

(ECF No. 26-6, at 30).

Regardless of the language of Section 17.3, Ms. Oslund was not a signatory to the Franchise Agreement, and under Maryland law, "[t]he general rule is that one cannot be held to a contract to which he is not a party." *Mehul's Inv. Corp. v. ABD Advisors, Inc.*, 130 F.Supp.2d 700, 707 (D. Md. 2001). What is more, the Franchise Agreement itself implies that an additional step can be

11

required of the franchisee to effectuate extension of the provision to non-signatory officers. Section 17.7 states that:

> At Franchisor's request, Franchisee shall obtain and furnish to Franchisor executed covenants similar in substance to those set forth in this Section 17 (including covenants applicable upon the termination of a person's relationship with Franchisee) from any or all of the following persons: (a) all managers of Franchisee and any other personnel employed by Franchisee who have received or will receive training from Franchisor; (b) all officers . . . of Franchisee[.]

(ECF No. 26-6, at 31). Plaintiffs do not allege that Pillar to Post, as Franchisor, ever requested such a covenant from Ms. Oslund or anyone else. Ms. Oslund, therefore, is not a party to any agreement with a restrictive covenant and is not bound by any restrictive covenant with Pillar to Post.

Plaintiffs seek to circumvent Ms. Oslund's non-signatory status through the "closely related doctrine." (ECF No. 31, at 19-20). The closely related doctrine holds "that a non-signatory to a contract may nonetheless be bound by that contract's *forum-selection clause* if the non-signatory is so 'closely related' to the dispute that it becomes 'foreseeable' that it will be bound." *Peterson v. Evapco, Inc.*, 238 Md.App.1, 33 (2018) (emphasis added). The closely related doctrine is irrelevant because it has never, to this court's knowledge, been applied to a non-compete clause. Plaintiffs' suggestion that the court in *Peterson* "held under Maryland law that a non-signatory was subject to a confidentiality agreement signed by the co-owner pursuant to the closely related

doctrine," (ECF No. 31, at 19), is incorrect. Because Ms. Oslund is not bound by the non-compete clause of the Franchise Agreement, Plaintiffs have failed to state a claim as to this count.

### 2. Count II: Tortious Interference

In their complaint, Plaintiffs argue that Defendants' conduct "constitutes tortious interference with the advantageous business relationship between Pillar to Post and MHI, including the Franchise Agreement." (ECF No. 23, at 21). Plaintiffs allege that Defendants "converted Pillar to Post's goodwill and favorable reputation with customers, realtors and other referral sources for their own benefit and otherwise interfered with Pillar to Post's goodwill and favorable reputation with customers, realtors and other referral sources generated while MHI operated its authorized franchise using the Pillar to Post trademarks, trade name, proprietary information and system." (*Id.*)

Tortious interference with contract has five elements: (1) a contract exists between the plaintiff and a third party, (2) the defendant knows of that contract, (3) the defendant intentionally interferes with that contract (and the interference is wrongful and without justification); (4) the third party breaches that contract; and (5) the plaintiff suffers damages from the breach. *See Kwang Dong Pharmaceutical Co. v. Han*, 205 F.Supp.2d 489, 496 (D.Md. 2002). In Maryland, the tort has two manifestations and "is committed [(1)]when a third party's intentional interference with another in his or her business or occupation induces a breach

13

of an existing contract or, [(2)] absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 296-97 (1994). Somewhat less "interference" is allowed when a contract is present, than when no contract or a contract terminable at will is involved. *Id*.

Plaintiffs have failed to plead how exactly the Defendants in this case induced MHI's breach. In fact, it is not even clear what breach forms the basis of Plaintiffs' claim. Plaintiffs have adequately pleaded the *existence* of a contract (the Franchise Agreement), as well as Defendants' *knowledge* of the Franchise Agreement, but they have not specified which clause of the Franchise Agreement Defendants induced MHI to breach. Indeed, while MHI is a defendant in this case, Plaintiffs do not allege that MHI breached the Franchise Agreement. Rather, they only argue that "Oslund (as an officer) breached the Franchise Agreement[.]" (ECF No. 23, at 2). As discussed above, Oslund was not herself bound by the Franchise Agreement's non-compete clause, and there is nothing in the complaint to support Plaintiffs' conclusory assertion that the Defendants "cause[d] MHI to breach the Franchise Agreement[.]" (*Id*. at 26).

Plaintiffs also seemingly raise a tortious interference claim separate and apart from the Franchise Agreement, arguing that Defendants' conduct meets the requirements "for the second manifestation of the tort[.]" (ECF No. 31, at 22). As already

mentioned though, this manifestation considers a narrower range of conduct to be tortious, and Maryland courts have defined that range of conduct to be "violence or intimidation, defamation, injurious falsehoods or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 153 (2000). Plaintiff nowhere specifies what part of Defendants' conduct falls into this limited category, merely asserting in its opposition that "Pillar to Post has asserted extensive factual support for its claim that Defendants interfered with the franchise relationship and Pillar to Post's goodwill and favorable reputation with customers and referral sources in the market." (ECF No. 31, at 22). That may be so, but none of the conduct Plaintiffs accuse Defendants of rises to the level required for their tortious interference claim. As such, this claim will be dismissed.

### 3. Count IV: Unfair Competition

Plaintiff's final stand-alone cause of action is for violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff alleges that "MHI's and Oslund's actions . . . are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of their goods, services or commercial activity by another person." (ECF No. 23, at 23). Plaintiffs' allegations revolve around Defendants' alleged use of Pillar to Post's trademarks. (*Id.*)

The Fourth Circuit explained the elements of a § 1125(a) violation as follows:

> A plaintiff alleging causes of action for trademark infringement and unfair competition must prove (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001).

Plaintiffs allege several instances where Defendants used Plaintiffs' mark: in an October 22, 2018 Facebook post, Oslund wrote that "[o]ur new office number is 401.878.3039 email is rachel@lodestarinspections.com! Can't wait to hear from you, for ur next inspections!" (ECF No. 23, at 18). In that post, Oslund's profile picture depicted her wearing a Pillar to Post shirt and nametag. (*Id.*). Following the domain in Oslund's e-mail address takes one to LodeStar's website, www.Lodestarinspections.com, which "states that LodeStar was formed in 2018 and has been in the industry for 12 years, an obvious reference to the continuation of MHI's business." (*Id.*). Similarly, LodeStar's Facebook page advertises a review from a customer who recommended LodeStar prior to its opening for business. The review references positive experiences "with [Oslund's] company" over the prior ten years. (*Id.*)

16

Taken together, these are relatively isolated uses of Pillar to Post's mark, but uses which are nonetheless likely to create confusion regarding LodeStar's status. Read in the light most favorable to Plaintiffs, these uses of Pillar to Post's mark appear designed to create confusion as to whether LodeStar is merely a continuation of MHI. "Evidence of only a small number of instances of actual confusion may be dismissed as *de minimis*." *George & Co. LLC v. Imagination Entm't. Ltd.*, 575 F.3d 383, 398 (4th Cir. 2009). However, the *de minimis* exception goes to the question of whether such isolated instances (or in this case, a single isolated instance) are "likely to confuse consumers." *Id*. "The determination of likelihood of confusion is an 'inherently factual' issue." *Nat'l Fed'n of the Blind, Inc. v. Loompanics Enters., Inc.*, 936 F.Supp. 1232, 1241 (4th Cir. 1996). Therefore, it is inappropriate for the court to apply the *de minimis* exception as a ground for dismissal.

On summary judgment however, "where an inference of probable consumer confusion can not reasonably be drawn from the undisputed facts, there is no issue for trial and summary judgment is appropriate." *Id*. at 1241-42. Here, as Plaintiffs have not yet been afforded the "opportunity for reasonable discovery," conversion to summary judgment is inappropriate. *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011).

17

Plaintiffs have stated a claim for violation of the Lanham Act; Count IV of the Amended Complaint will not be dismissed.

**4. Count III: Civil Conspiracy**

Plaintiffs' final count alleges that LodeStar, Oslund, Roseman and the MHI employees engaged in a civil conspiracy to (1) cause MHI to breach the Franchise Agreement, (2) transfer MHI's business, goodwill, and favorable reputation to LodeStar without consideration or approval of the Bankruptcy Court, (3) tortiously interfere with the franchise relationship between Pillar to Post and MHI, and (4) tortiously interfere with Pillar to Post's goodwill and favorable reputation with customers, realtors and other referral sources generated while MHI operated its authorized franchise using Pillar to Post trademark, trade name, proprietary information and system. (ECF No. 23, at 22-23).

Under Maryland law, civil conspiracy is not an independent cause of action. *See Hejirika v. Md. Div. of Corr.*, 264 F.Supp.2d 341, 346-47 (D.Md. 2003). Rather, a "defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort." *Fare Deals, Ltd. V. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 692 (D.Md. 2001). As discussed above, Plaintiff has failed to state a claim for breach of contract or tortious interference. Therefore, there can be no civil conspiracy as to these counts.

It does not appear that Plaintiff intended to include a Lanham Act violation independent of any tortious interference claim in

this count.  Plaintiffs' Lanham Act claim is directed to Oslund and MHI.  Again, civil conspiracy requires "an agreement *by at least two persons*[.]"  *Baltimore-Washington Tel. Co. v. Hot Leads Co. LLC*, 584 F.Supp.2d 736, 744 (D.Md. 2008) (emphasis in original).  As noted in that case, the "'intracorporate conspiracy doctrine' holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.  In essence, this means that a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  It is not clear in what capacity Plaintiffs allege Ms. Oslund was acting, and MHI is not sued for civil conspiracy.  The other defendants alleged to have participated in the civil conspiracy are not alleged to have participated in the Lanham Act violation.  Accordingly, this claim will also be dismissed.

### III. Conclusion

For the foregoing reasons, the motion to dismiss or in the alternative for summary judgment filed by Defendants will be granted in part and denied in part.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
